UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW DEAN STANISCI,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

    Defendant.

Case No. C17-1235 TSZ

**ORDER AFFIRMING COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Andrew Dean Stanisci seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Mr. Stanisci contends the ALJ erred by excluding his rib impairment in step two, rejecting several medical opinions and lay witness statements, finding that he had past relevant work, and relying on jobs that he would not be able to maintain. Dkt. 11. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Mr. Stanisci is currently 32 years old, has less than a high school education, and has worked as a fast food worker. Tr. 27-28. He applied for benefits in September 2013, alleging disability as of April 1, 2008. Tr. 17. His applications were denied initially and on

ORDER AFFIRMING COMMISSIONER'S
FINAL DECISION AND DISMISSING THE
CASE WITH PREJUDICE - 1

reconsideration. *Id*. After conducting a hearing in December 2015, the ALJ issued a decision finding Mr. Stanisci not disabled. Tr. 17-30.

**THE ALJ'S DECISION**

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Mr. Stanisci has not engaged in substantial gainful activity since April 1, 2008, the alleged onset date.

**Step two:** He has the following severe impairments: affective disorder, anxiety disorder, personality disorder, and substance addiction disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Stanisci can work at all exertional levels, but only simple, routine tasks in a routine environment with only superficial interaction with coworkers and the general public, and occasional interaction with supervisors.

**Step four:** He can perform past relevant work as a fast food worker.

**Step five:** In the alternative, as there are jobs that exist in significant numbers in the national economy that he can perform, he is not disabled.

Tr. 19-29. The Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

**DISCUSSION**

**A.     Rib Impairment**

At step two, an ALJ determines whether a claimant has one or more medically determinable impairments that, singly or in combination, are severe, *i.e.*, significantly limit the ability to do basic work activities. 20 C.F.R. § 404.1521-1522. Step two is a "de minimis

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING COMMISSIONER'S
FINAL DECISION AND DISMISSING THE
CASE WITH PREJUDICE - 2

screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

At step two, the ALJ rejected Mr. Stanisci's claim that his rib pain was a "medically determinable impairment." Tr. 19-20. "While the claimant may have rib pain, the record does not substantiate the existence of a medically determinable condition consistent with the requirements of the regulations." Tr. 20. The regulations require that an impairment result from "anatomical, physiological, or psychological abnormalities…." 20 CF.R. § 404.1521. No such abnormality is established here. Asked for diagnostic test results, Dr. Luger wrote only that a chest x-ray was normal. Tr. 532. While Dr. Luger stated in treatment notes that the location of Mr. Stanisci's rib pain was "more consistent with rib-tip syndrome" than with another syndrome, he never listed rib-tip syndrome as a diagnosis in treatment notes or in the work capacity assessment. Tr. 539. Instead, he wrote only "[r]ib pain" where the work capacity assessment form asked for a diagnosis. Tr. 532. Rib-tip syndrome would be an impairment resulting from an abnormality. Pain, on the other hand, is a symptom. *See* 20 C.F.R. § 404.1529(a) ("How we evaluate symptoms, including pain"). The ALJ did not err in finding that "rib pain" was not a medically determinable impairment.

**B.    Mental Impairments**

The ALJ found that Mr. Stanisci was able to play complex and sometimes interactive videogames for up to eight hours a day. Tr. 21, 22, 23. He "can do tasks that require attention to detail, such as making bead bracelets." Tr. 21 (citing Tr. 50). He also worked full time at a pizza restaurant for eight or ten months. Tr. 21.

Mr. Stanisci argues the ALJ erred in rejecting three medical opinions on his mental impairments. If contradicted, as here, a physician's opinion may be rejected only if the ALJ

provides "'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ discounted the opinions of Shawn K. Kenerdine, Ph.D., Dana Harmon, Ph.D., and William R. Wilkinson, Ed.D., on largely the same grounds: the check-the-box forms they filled out were ambiguous and insufficiently explained and they reviewed limited records, and the opined limitations were inconsistent with Mr. Stanisci's work history and his ability to be present for the mental examinations. Tr. 26. In addition, Dr. Kenerdine and Dr. Wilkinson failed to recommend medication.[4] Tr. 26. Dr. Wilkinson opined the limitations would last 9-12 months. Tr. 26, 524. And Dr. Kenerdine diagnosed oppositional defiant disorder, unlike any other examining physician. Tr. 26, 373.

Failure to account for Mr. Stanisci's work history supports discounting the three doctors' opinions. An ALJ must evaluate a claimant's "'ability to work on a *sustained* basis'" because the "sporadic ability to work" is not inconsistent with disability. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (emphasis in original) (quoting former 20 C.F.R. § 404.1512(a) (1995)). All three doctors were aware Mr. Stanisci had a job that lasted eight or ten months. *See* Tr. 372, 378,[5] 522. While there is no bright-line durational rule, the Ninth Circuit has concluded that work lasting "almost a year" evinces an ability to sustain work while two months of work does not. *Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 693-94 (9th Cir. 1999). The Commissioner has determined that "work lasting more than 6 months" cannot be an unsuccessful work attempt. SSR 84-25, available at 1984 WL 49799. Mr. Stanisci was able to complete

---

[4] Dr. Harmon did recommend medication, and thus this reason cannot support discounting his opinion. *See* Tr. 378 ("Andrew is not taking psychiatric medications or involved with any mental health treatment, which might enable him to function more successfully.").

[5] Dr. Harmon reviewed Dr. Kenerdine's report, which stated "He has had multiple jobs, none of them lasting over 10 months."

normal workdays and workweeks continuously for eight or ten months, which is significantly more than six months. The ability to repeatedly go to work day after day, week after week, for eight to ten months is very probative of his ability to do so on a sustained basis. Accordingly, substantial evidence supported the ALJ's finding that eight to ten months was long enough to indicate that Mr. Stanisci can maintain full-time work on a continuing basis. The failure to account for this ability was a specific and legitimate reason to discount all three doctors' opinions.

Substantial evidence also supports the ALJ's finding that Dr. Wilkinson's opinion that Mr. Stanisci would be "impaired with available treatment [for] 9-12 months" diminished the relevance of his opinion. Tr. 524. Substantial evidence is more than a scintilla but less than a preponderance. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). A disability must last "not less than 12 months." 20 C.F.R. § 404.1505(a). There is more than a scintilla of evidence that Dr. Wilkinson's opinion, by its own terms, described limitations that would last nine, ten, or eleven months, and therefore do not meet the definition of disability for Social Security purposes. Mr. Stanisci argues that because Aaron R. Burdge, Ph.D., assessed him with similar conditions four years previously, the disability has lasted over 12 months, and that in any case Mr. Stanisci has not received treatment. Dkt. 11 at 8, Dkt. 13 at 3. But Dr. Burge also opined that the conditions would last less than a year, specifically "6-9 months depending on treatment contingencies" and that vocational training or services would "minimize or eliminate barriers to employment…." Tr. 554. The failure to seek or adhere to treatment cannot be used to extend an impairment such that it reaches the 12-month threshold. *See* 20 C.F.R. § 416.930(a)-(b) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this

treatment is expected to restore your ability to work…. If you do not follow the prescribed treatment without a good reason, we will not find you disabled").

Substantial evidence also supports the ALJ's finding that Dr. Harmon's and Dr. Wilkinson's opinions lacked supporting evidence and reasoning. An ALJ may discredit medical opinions that are "conclusory, brief, and unsupported by the record as a whole … or by objective medical findings…." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Harmon stated that it was "unclear that Andrew's mental health difficulties are so severe that he would be unable to work or engage in vocational rehabilitation."[6] Tr. 378. This assessment contradicts his opinion that Mr. Stanisci would have marked (more than moderate but less than severe) limitations in, among other things, maintaining appropriate behavior and completing a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 380. Similarly, Dr. Wilkinson performed a mental status examination that had normal results except for limited insight and "questionable" judgment. Tr. 525. There was no explanation for how his clinical findings could support his opinion that Mr. Stanisci had "marked" functional limitations in areas such as maintaining appropriate behavior and completing a normal workday and workweek. Tr. 523-24. The conclusory and unsupported limitations are a specific and legitimate reason to discount the reliability of Dr. Harmon's and Dr. Wilkinson's opinions.

In contrast, Dr. Kenerdine documented extensive clinical findings, including abnormalities in thought processes and content, perception, concentration, and insight and judgment. Tr. 375-76. She performed a mental status exam and tested for depression and anxiety. Tr. 377. Dr. Kenerdine's opined limitations are supported rather than contradicted by

---

[6] Dr. Harmon also noted that "it is unclear that Andrew is fully credible…." Tr. 378.

her medical findings, and thus substantial evidence does not support this reason for discounting her opinion.

That Dr. Kenerdine's diagnosis of oppositional defiant disorder conflicted with other examining doctors' diagnoses lowers the threshold for rejecting her opinion, but is not a reason in itself to discount her opinion. *See Lester*, 81 F.3d at 830–31 ("the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record").

The ALJ found that Mr. Stanisci was "very responsive to medication." Tr. 26. There is evidence that his depression responded to antidepressant medication. *See* Tr. 64. Dr. Wilkinson diagnosed depression, and thus his failure to recommend antidepressants was a specific and legitimate reason to discount his opinion.[7] *See* Tr. 523. But Dr. Kenerdine diagnosed personality disorder and anxiety, not depression. Tr. 373. There is no evidence that Mr. Stanisci took medication for his personality or anxiety disorders, or any other evidence or medical opinion in the record that would enable the ALJ to extrapolate from the success treating depression that other impairments would respond to other types of medications. Thus the ALJ erred in finding that Dr. Kenerdine should have recommended medication.

Lastly, Mr. Stanisci's ability to attend an examination is not a reason to discount the doctors' opinions. It is not inconsistent with the opined difficulty completing a workday and workweek when there is no evidence in the record to suggest that the examination took anywhere close to a day or a week. *See* Tr. 26.

---

[7] Mr. Stanisci's arguments that psychologists are not permitted to prescribe medications and that the purpose of the examination was not treatment miss the mark. Dkt. 11 at 5. The forms ask for recommendations, not prescriptions. Furthermore, one of the psychologists, Dr. Harmon, did recommend medication. Tr. 378.

ORDER AFFIRMING COMMISSIONER'S
FINAL DECISION AND DISMISSING THE
CASE WITH PREJUDICE - 7

While the ALJ may have included erroneous reasons to discount Dr. Kenerdine's, Dr. Wilkinson's, and Dr. Harmon's opinions, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where an ALJ provides at least one valid reason supported by substantial evidence to discount a claimant's credibility, inclusion of other erroneous reasons is harmless). As in *Carmickle*, the valid reasons are specific and go to the heart of the matter of the claimant's "ability to perform vocational functions…." *Id.* at 1163. Dr. Harmon's and Dr. Wilkinson's mild clinical findings do not support strong functional limitations. Dr. Wilkinson's failure to recommend antidepressants suggests he did not think the depression he diagnosed was severe enough to warrant medication. And the failure of all three doctors to account for Mr. Stanisci's ability to work full time for eight or ten months is highly relevant to the disability inquiry.

The Court concludes the ALJ did not err in discounting the opinions of Dr. Kenerdine, Dr. Harmon, and Dr. Wilkinson.

**C.     Lay Testimony**

In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). Mr. Stanisci's friend Justin Landy and girlfriend Eunice Bolton submitted lay witness statements. Tr. 344, 347-48. Both stated that Mr. Stanisci's rib pain interferes with normal daily activities and that his short term memory is severely impaired. Tr. 344, 347. The ALJ permissibly gave Mr. Landy's and Ms. Bolton's statements on rib pain "little to some weight" because, as discussed above, substantial evidence supported the ALJ's conclusion at step two that Mr. Stanisci had no medically determinable rib impairment.

1   The ALJ discounted their statements on memory impairments because they were similar
2   to Mr. Stanisci's statements and thus her assessment applied equally, and because she gave more
3   weight to the opinions of mental health professionals Jennifer Irwin, M.D., and Beth Fitterer,
4   Ph.D. Tr. 27. The ALJ's rejection of Mr. Stanisci's alleged memory issue because it "did not
5   preclude his ability to be a fast food worker for several months" was supported by substantial
6   evidence and is a germane reason to discount the lay witnesses' statements. Tr. 23. Dr. Fitterer
7   and Dr. Irwin opined Mr. Stanisci was not significantly limited in the ability to remember short,
8   simple instructions. Tr. 130, 441. Inconsistency with the medical evidence is a germane reason
9   for discounting lay witness testimony. *See Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).
10  The Court concludes the ALJ did not err in discounting Mr. Landy's and Ms. Bolton's
11  statements.

## D.     Steps Four and Five

13  At step four, Mr. Stanisci argues the ALJ erred in finding he could perform past relevant
14  work as a fast food worker because he did not earn enough at either of his fast food jobs to reach
15  the level of substantial gainful activity, as required for past relevant work. Dkt. 11 at 15-16
16  (citing 20 C.F.R. § 404.1560(b)(1)). Any error at step four is harmless because the ALJ found in
17  the alternative at step five that jobs exist in significant numbers in the national economy that Mr.
18  Stanisci can perform. Tr. 28. Mr. Stanisci argues that the ALJ erred at step five in relying on
19  three light jobs because Dr. Luger limited him to sedentary work, and that the three remaining
20  sedentary jobs alone do not exist in substantial numbers in the national economy. As discussed
21  above, Dr. Luger's assessment does not establish a medically determinable rib impairment. Thus
22  the ALJ did not err in relying on the three light jobs in addition to the three sedentary jobs. The
23  ALJ's conclusion that Mr. Stanisci is not disabled must be upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 30th day of May, 2018.

Thomas S. Zilly
United States District Judge